1

2

3

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

4

5

HYBRID INTERNATIONAL, LLC, a
Texas limited liability company;
JOHNATHAN SCHULTZ, an individual,

Case No. 2:19-cv-02077-JCM-EJY

6

Plaintiff,

**ORDER**

7

v.

8

9

10

SCOTIA INTERNATIONAL OF NEVADA,
INC., a Utah corporation; WARREN
BARBER, an individual; MAX BARBER, an
individual; DOES I through X; and ROE
business entities I through X, inclusive,

11

Defendants.

12

13

SCOTIA INTERNATIONAL OF
NEVADA, INC., a Utah corporation,

14

Counterclaimant,

15

v.

16

HYBRID INTERNATIONAL, LLC, a
Texas limited liability company,

17

Counterdefendant.

18

19

Before the Court is Scotia International, Max Barber, and Warren Barber's Motion to

20

Withdraw Admissions and Showing Cause.  ECF No. 77.  Plaintiffs Hybrid International and

21

Johnathan Schultz filed a Response (ECF No. 78), and Defendants filed a Reply (ECF No. 80).  The

22

Court finds as follows.

23

**I.    BACKGROUND**

24

Plaintiffs filed this breach of contract lawsuit against Defendants in state court.  Defendants

25

removed the case to this Court on December 4, 2019.  ECF No. 1.  Plaintiffs filed a First Amended

26

Complaint on August 31, 2020.  ECF No. 46.  Defendants filed an Answer and Counterclaims on

27

October 8, 2020.  ECF No. 61.  The parties exchanged initial disclosures, and in October 2020,

28

Plaintiffs  served  Defendants  with  their  First  Request  for  Admissions  ("RFAs"),  First  Set  of

1    Interrogatories, and First Request for Production of Documents and Things.  Plaintiffs also issued

2    subpoenas seeking relevant information from third parties.  Defendants sought to quash those third-party

3    subpoenas.  ECF Nos. 35, 45.  Both motions were denied.  ECF No. 50, 58.  Aside from the effort to

4    quash subpoenas, no other discovery actions were taken by Defendants.

5           On November 9, 2020, counsel for Defendants moved the Court to withdraw from this case.

6    ECF No. 63.  The Court granted counsel's withdrawal motion and ordered that "the due date for

7    Defendants' responses to Plaintiff's written discovery … [be] stayed for thirty (30) days" from the then-

8    required due date.  ECF No. 65.  The Court further ordered that neither party was allowed to propound

9    written discovery or set depositions during the period measured from the date of the Order through

10   December 30, 2020.  The approximate six-week period of stayed discovery was provided to allow

11   Defendants to locate and retain new counsel.  *Id.*

12          On December 18, 2020, Plaintiffs filed a motion to "stay discovery and trial deadlines pending

13   a notice of appearance of new counsel for Scotia and the Barber Defendants."  ECF No. 66 at 2.  The

14   Court granted a discovery stay through January 29, 2021, and Defendants were ordered to respond to

15   outstanding discovery propounded by Plaintiffs on or before February 16, 2021.  ECF No. 69 at 4.  The

16   Court further ordered that "if Defendants fail to respond to pending discovery, irrespective of whether

17   they retain counsel on or before the due date stated above, Plaintiffs may move to compel and for

18   sanctions."  *Id.*  Defendants did not respond to discovery or retain new counsel by the due date.

19          On February 23, 2021, Plaintiffs filed a motion for an order to show cause, stating that

20   Defendants had, yet again, failed to obtain counsel or respond to their discovery requests by the Court's

21   deadline.  ECF No. 70.  Plaintiffs requested that Defendants' RFAs be deemed admitted, and that

22   Defendants be required to show cause why they should not be held in contempt for failing to obey the

23   Court's discovery orders.  *Id.*  The Court granted Plaintiffs' motion, deemed Defendants to have admitted

24   each of the RFAs propounded by Plaintiffs, and ordered Defendants to show cause by May 20, 2020 why

25   they should not be held in contempt of Court.  ECF No. 71.  Defendants were further warned that failure

26   to timely respond to the order to show cause "shall result in a finding of contempt of court and additional

27   sanctions up to and including the striking of their answer and counterclaims or a finding of default."  *Id.*

28   at 3.

1          On May 11, 2021, new counsel for Defendants entered their appearance and filed the pending

2    Motion to Withdraw Admissions and Showing Cause.  ECF No. 77.  Through this motion, Defendants

3    contend that they were unable to find counsel, and that pleadings and orders in this case were not mailed

4    to the correct address for Scotia.  Further, Defendants claim they believed Plaintiffs "intended to wait

5    until Scotia had retained counsel before moving forward with discovery" based on Plaintiffs' "previous

6    willingness to extend the discovery response deadlines" and therefore "did not believe that [Plaintiffs]

7    would force its responses or seek sanctions prior to Scotia obtaining new counsel."  *Id.* at 5.

8    **II.      DISCUSSION**

9              **A.      Defendant's Motion to Withdraw Admissions is denied**.

10         Rule 36(a) states that a matter is deemed admitted "unless, within 30 days after being served,

11   the party to whom the request is directed serves on the requesting party a written answer or objection

12   addressed to the matter and signed by the party or its attorney."  Fed. R. Civ. P. 36(a)(3).  Once

13   admitted, the matter "is conclusively established unless the court, on motion, permits the admission

14   to be withdrawn or amended."  Fed. R. Civ. P. 36(b).

15         The Ninth Circuit emphasizes that a court's decision to grant relief under Rule 36(b) is

16   permissive, not mandatory, and that "[u]nanswered requests for admissions may be relied on as the

17   basis for summary judgment."  *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007).  "Trial

18   courts [have been] advised to be cautious in exercising their discretion to permit withdrawal or

19   amendment of an admission."  *Id.* (quoting *999 v. C.I.T. Corp.*, 776 F.2d 866, 869 (9th Cir. 1985)).

20   The Court *may* permit withdrawal or amendment if doing so (1) would promote the presentation of

21   the merits of the action and (2) if the court is not persuaded that it would prejudice the requesting

22   party in maintaining or defending the action on the merits.  Fed. R. Civ. P. 36(b).  "The party relying

23   on the deemed admission has the burden of proving prejudice."  *Conlon*, 474 F.3d at 622.

24         While "a district court must specifically consider both factors under the rule before deciding

25   a motion to withdraw or amend admissions," the court is not required to permit withdrawal even if

26   both factors are met.  *Id.* at 622, 624–25. "[I]n deciding whether to exercise its discretion when the

27   moving party has met the two-prong test of Rule 36(b), the district court may consider other factors,

28   including whether the moving party can show good cause for the delay and whether the moving

1   party appears to have a strong case on the merits." *Id*. at 625.  Even so, "a court should not go

2   beyond the necessities of the situation to foreclose the merits of controversies as punishment."

3   *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995).

4          Here, Defendants arguably meet both prongs of the Rule 36(b) test.  The deemed admissions

5   would, in effect, preclude any presentation of this case on the merits as they act to admit essentially

6   all facts alleged in Plaintiff's First Amended Complaint and to disprove the allegations in

7   Defendants' Counterclaims.  *See* ECF No. 70 at 14-18 (Plaintiff's RFA's to Scotia); *see also Sonada*

8   *v. Cabrera*, 255 F.3d 1035, 1039 (9th Cir. 2001) (finding first prong met when admissions "would

9   effectively eliminate a merits determination").   Further, the Court is not persuaded that withdrawal

10   would prejudice the requesting party in maintaining or defending this action on the merits.  The

11   Ninth Circuit is "reluctant to conclude that a lack of discovery, without more, constitutes prejudice."

12   *Conlon*, 474 F.3d at 624.  Rather, any such prejudice "must relate to the difficulty a party may face

13   in proving its case at trial."  *Id*.  Plaintiffs claim that withdrawal will prejudice them because

14   discovery is closed, and because prolonging this case would potentially prejudice Hybrid's ability

15   to collect any judgment against Defendants.  Neither showing of prejudice relates to Plaintiffs'

16   ability to present their case at trial and therefore are not the types of prejudice the Ninth Circuit

17   considers when addressing withdrawal motions.  *See*, *e.g.*, *Id*. (rejecting prejudice argument related

18   to closed discovery, noting that "[t]he district court could have reopened the discovery period").

19          However, Defendants have not shown good cause to allow withdrawal.  Defendants' motion

20   argues that there were three reasons for their failure to comply with discovery and the Court's orders:

21   (1) Plaintiffs' pleadings were not mailed to the right Scotia address; (2)  Defendants were "unable

22   to obtain counsel";  and (3) Defendants did not believe Plaintiffs would pursue this case while Scotia

23   did not have counsel.  All are unavailing reasons that do not demonstrate good cause why Defendants

24   failed to participate in this case.

25          First, Defendants' contention that Scotia was not properly served appears disingenuous.  As

26   Plaintiffs explain, they mailed their pleadings to three addresses, all provided by Defendants' prior

27   counsel upon withdrawal, including: (1) a Scotia address listed by Defendants' prior counsel as

28   "corporate headquarters," (2) the listed address for Max Barber, and (3) the listed address for Warren

1    Barber.[1]   *See* ECF No. 78-2 (Certificates of Mailing/Service for ECF Nos. 66, 68, 70, 72).

2    Defendants claim that the "corporate headquarters" address is not the address listed on the Nevada

3    and Utah Secretary of State websites, and therefore that the documents were not properly served on

4    Scotia.  ECF No. 77 at 5.  Defendants also contend that the pleadings were not "served upon Scotia's

5    registered agent for service of process."  *Id.*   However, Plaintiffs have demonstrated that the

6    corporate headquarters address they sent litigation materials to was, in fact, the primary address

7    listed on both state websites before Defendants changed those addresses on March 25, 2021 and

8    April 2, 2021, which is *after* Plaintiffs filed their motion for an order to show cause.[2]   Further,

9    Scotia's registered agent for service, Dorothy Barber, lives at the same address of Max Barber—an

10   address that Plaintiffs have mailed their pleadings to in this case.

11        Defendants carefully crafted their motion and supporting declaration to avoid discussing

12   whether Max, Dorothy or Warren received any the pleadings in this case—Max Barber merely states

13   that he and the other Scotia officers and directors were not *personally served* with the motion for an

14   order to show cause.  ECF No. 77-1 (Declaration of Max Barber).  But personal service of pleadings

15   is not required by the federal rules.  *See* Fed. R. Civ. P. 5(b)(2)(c) (allowing service of pleadings and

16   other papers by "mailing it to the person's last known address—in which event service is complete

17   upon mailing").  Defendants do not deny that Plaintiffs mailed all pleadings and papers to (1) the

18   address listed by prior counsel as "corporate headquarters" and listed as Scotia's primary address in

19   Nevada and Utah until March and April 2021, (2) Max Barber's listed address, which happens to be

20   Scotia's registered agent's address, and (3) Warren Barber's listed address.

21        Further, Defendants confusingly contend that they did not believe they had to act quickly to

22   find counsel because Plaintiffs moved to stay discovery after counsel withdrew proving that at least

23   one of the Defendants must have received Plaintiffs' mailings while they were without counsel.

24   Tellingly, Defendants seem to abandon the argument regarding proper service in their reply and drop

25   _____

26   [1]      Prior counsel provided a second address for Scotia, listed as an "office building."  *See* ECF No. 63 at 2.  This
     secondary address is the one Defendants now claim should have been used.

27   [2]      *Compare* ECF No. 78-3 (Scotia's information on Nevada Secretary of State website before March 25, 2021,
     listing corporate headquarters as primary address for all officers) and ECF No. 78-6 (Scotia's information, registered
     with Utah Secretary of State, listing corporate headquarters as principal address before April 2, 2021) *with* ECF No. 78-
28   4 (Nevada Secretary of State website showing address change on March 25, 2021) and ECF No. 78-5 (Utah Secretary
     of State form showing address change for Scotia and its registered agent on April 2, 2021).

all pretense of arguing that their delay is excusable because of improper service.  This fact, together with Defendants' misrepresentation weigh in support of a finding of bad-faith litigation tactics, not proof of Defendants' renewed commitment to engaging in this litigation.

Second, Defendants' proffered inability to retain counsel fails to be persuasive.  The Court provided Defendants with multiple extensions of the deadline to find counsel.  Defendants did not, and they provide no intelligible reason why they were unable to comply with those orders.  Indeed, in a similar case brought against Defendants in the District of Utah, Defendants' counsel withdrew on November 6, 2020.[3]  ECF No. 78-1 at 22 (Civil Docket for Utah District Court Case No. 2:20-cv-00610-JNP-CMR, ECF No. 155) (the "Utah case").  On December 14, 2020, the Magistrate Judge in that case ordered Defendants to show cause why default judgment should not be entered against them for failure to file an appearance of new counsel.  *Id.* at 23 (Order to Show Cause at Utah case ECF No. 165).  Then, by December 22, 2020, Defendants found new counsel.  *Id.* (Notices of Appearance at Utah case ECF Nos. 166 & 167).  Upon reviewing Defendants' actions in this and the Utah case, in appears to the Court that Defendants may ignore Court orders until they are faced with an order to show cause.

Defendants have not explained why they were unable to find counsel before an order to show cause was issued against them.  And, Defendants' action in at least one other case demonstrates their ability to find new counsel as early as December 2020.  Any delay attributed to Defendants' "inability" to retain counsel does not show good cause for Defendants' inactivity in this case.

Third, Defendants' representation that they did not believe Plaintiffs would continue seeking discovery while Defendants were without counsel is specious.  While Plaintiffs sought a stay of discovery while Defendants were meant to be looking for counsel, it was not reasonable to conclude that a motion to stay discovery absolved Defendants of their obligation to find counsel in a timely manner.  Further, the Court denied Plaintiff's motion in part and gave Defendants a firm deadline to find counsel and respond to discovery.  At that time, any inclination that Plaintiffs' leniency would

---

[3]  Defendants contend, without supporting authority, that filings in the other cases against them are irrelevant and should not be considered.  The Court disagrees and properly takes judicial notice of the docket and pleadings in the Utah case.  *See* Fed. R. Evid. 201(b); *White v. Martel*, 601 F.3d 882, 885 (9th Cir. 2010); *Harris v. City of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of undisputed matters of public record … including documents on file in federal or state courts").

advantage Defendants certainly should have dissipated.  Allowing Defendants to ignore scheduling orders simply because Plaintiffs once sought to stay discovery would undermine the purpose and effect of those orders.  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) ("Disregard of [scheduling orders] "would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.") (internal citations omitted).  Moreover, Defendants' excuse is surprising as it implicates an insidious motive behind dragging their feet to find counsel—they thought Plaintiffs would not pursue this case until new counsel was found giving Defendants an incentive to put off the search.  Unfortunately for Defendants, Plaintiffs have persevered, and Defendants can no longer ignore Court orders.

In short, Defendants ask the Court to find that the last six months of noncompliance should be ignored because—after facing the possibility of sanctions—they are now "committed to continuing this litigation in a timely, efficient, and professional manner."  ECF No. 77 at 8. Defendants come to this position too late to avoid any consequences for their inaction.  The reasons Defendants proffer for their inaction are, at best, insufficient to show good cause or, at worst, rooted in misrepresentations meant to mislead the Court.  Defendants' lack of participation in this case, their repeated attempts to quash duly served subpoenas, and their failure to pursue their affirmative counterclaims through discovery or otherwise, demonstrate a lack of good faith throughout this litigation.

Defendants' actions in this case do not amount to good cause to excuse their failures to defend against Plaintiffs' case or prosecute their own.  They have not proffered any good reasons for why they have allowed the discovery period in this case to lapse without responding to any of Plaintiffs' discovery requests or requesting any discovery to support their own affirmative counterclaims. Defendants have still not attempted to answer the outstanding discovery pending since October 2020, and they have failed to show any good cause or excusable neglect that would warrant re-opening discovery.[4]  Instead, Defendants have shown that they have not taken this litigation seriously and

---

[4] Defendants appear to seek an extension of the discovery deadline in their motion to withdraw admissions. ECF No. 77 at 6 ("Scotia's counsel requests a reasonable deadline to respond to the discovery so that Scotia's responses are complete and fully and adequately respond to all requests.").  Defendants did not file a separate motion requesting such relief, as required by LR IC 2-2(b) ("For each type of relief requested or purpose of the document, a separate document must be file and a separate event must be selected for that document").  Further, Defendants did not include the

1  provide no legitimate reasons to assure the Court that they will now.  They may have attempted to

2  mislead the Court about service difficulties that appear manufactured to excuse their inactivity.  No

3  lesser sanction than deemed admissions will suffice to respond to their conduct. The Court therefore

4  exercises its discretion to deny Scotia's request to withdraw its deemed admissions.

5  **B.      The Court declines to hold Scotia in contempt**.

6  In their motion, Defendants offer the excuses discussed above to support their contention that

7  they should not be held in contempt.  As discussed above, those excuses do not persuade the Court.

8  Plaintiffs, in their opposition, contend that civil contempt is still an appropriate remedy here, and ask

9  the Court to strike Defendants' answer and counterclaims and render default judgment against them.

10 Defendants, apparently realizing that their proffered excuses do little to help their argument, respond

11 in reply that they *cannot* be held in contempt because they did not violate a "clear and definite" court

12 order. ECF No. 80 at 3-5.  According to Defendants, the multiple court orders related to Defendants'

13 obligations to find counsel or respond to discovery were merely orders extending deadlines, not ones

14 clearly requiring any affirmative action by Defendants.  *Id*.

15 Even putting aside the questionable logic of Defendants' argument, and the fact that they

16 raised this argument only in reply,[5] the Court declines to hold Defendants in civil contempt.

17 Deeming the RFAs admitted is a sufficiently severe sanction to address Defendants' conduct in this

18 case. Further, civil contempt is meant to be coercive or compensatory, not punitive.  *Shell Offshore*

19 *Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) (noting that there are two types of

20 contempt— civil and criminal—and "[t]he purpose of civil contempt is coercive or compensatory,

21 whereas the purpose of criminal contempt is punitive") (internal quotations omitted). "The test [to

22 distinguish civil from criminal contempt] is 'what does the court primarily seek to accomplish by

23 imposing the sanction?'"  *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir.

24 1983) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). Plaintiffs do not seek any

25 coercive contempt order compelling Defendants to respond to still-outstanding discovery.  Nor do

26 ────────────────

27 information required by LR 26-3 to allow an extension of the discovery deadlines.  While the Court does not undertake a separate analysis of any such extension request, the good cause discussion relevant to the deemed admissions is nevertheless relevant to any extension discussion and indicates that any such request should also be denied.

28 [5]     The Court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003)).

1  Plaintiffs explain how a civil contempt order rendering default judgment would "compensate the

2  complainant for losses sustained" that would not already be addressed by the deemed admissions.

3  *Shell Offshore*, 815 F.3d at 629 (quoting *United States v. UMWA*, 330 U.S. 258, 303–04 (1947)). By

4  ordering Plaintiffs' preferred contempt sanctions, the Court would be punishing Defendants for their

5  actions, rather than attempting to induce compliance with a court order or to compensate Plaintiffs.

6  *See Falstaff Brewing*, 702 F.2d at 778 ("The primary purpose of criminal contempt is to punish past

7  defiance of a court's judicial authority, thereby vindicating the court.").   The Court declines to issue

8  contempt sanctions that would be effectively criminal in nature.

9        **C.      Monetary sanctions are warranted to compensate Plaintiffs for Defendants'**

10              **conduct**.

11       Courts have "the inherent power to impose sanctions for … bad-faith conduct." *Chambers*

12  *v. NASCO, Inc.*, 501 U.S. 32, 46 (1991); *see also Roadway Express, Inc. v. Piper*, 447 U.S 752, 765

13  (year) (recognizing the "well-acknowledged inherent power of a court to levy sanctions in response

14  to abusive litigation practices").   One such "permissible sanction is an assessment of attorney's

15  fees"—an order . . . instructing a party that has acted in bad faith to reimburse legal fees and costs

16  incurred by the other side." *Goodyear Tire & Rubber Co. v. Haeger*, __ U.S. __, 137 S.Ct. 1178,

17  1186 (2017) (citing *Chambers*, 501 U.S. at 45).

18       The Court finds that Defendants' bad faith conduct in avoiding this litigation and failing to

19  timely retain counsel or respond to discovery is sanctionable conduct allowing Plaintiffs

20  reimbursement of attorneys' fees and costs expended in opposing Defendants' Motion to Withdraw

21  Admissions and Showing Cause (ECF No. 78).

22  **III.    Order**

23       Accordingly, IT IS HEREBY ORDERED that Defendants' Motion to Withdraw Admissions

24  and Showing Cause (ECF No. 78) is DENIED.  The Court affirms its determination that Defendants'

25  Admissions are deemed admitted.  The Court further DENIES Defendants' request to extend the

26  deadline to respond to discovery.

27       IT IS FURTHER ORDERED that dispositive motions shall be due on or before **September**

28  **23, 2021.**  The joint pretrial order shall be due 30 days after the dispositive-motion deadline.  If

1  dispositive motions are filed, the joint pretrial order shall be due 30 days after decision on those

2  motions.

3         IT IS FURTHER ORDERED that Defendants shall be required to pay reasonable fees and

4  costs incurred by Plaintiffs related to their response to Defendants' Motion to Withdraw Admissions

5  and Showing Cause.

6         IT IS FURTHER ORDERED that, within ten (10) days of the date of this Order Plaintiffs

7  shall submit a memorandum of fees and costs incurred in responding to Defendant's Motion,

8  detailing the activities, hours spent (in tenths of hours), and the rate charged by each attorney who

9  worked on the response.  Appropriate redactions from billing records for attorney client privilege

10  and/or work product may be made for the public filing with non-redacted copies of such records

11  filed under seal.  Plaintiffs shall also submit to the Court records evidencing the costs incurred

12  relating to their response.  Defendants shall have 14 days to file a response, if any is desired.  No

13  reply shall be permitted by Plaintiff.

14         Dated this 24th day of August, 2021.

15

16

17  _____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28